# United States Court of Appeals
## For the First Circuit

No. 07-2425

UNITED STATES OF AMERICA,

Appellee,

v.

BYRON POLK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

Richard L Hartley and Law Office of Richard Hartley on brief for appellant.
Paula D. Silsby, United States Attorney, and Margaret D. McGaughey, Appellate Chief, on brief for appellee.

October 30, 2008

**SELYA**, **Circuit Judge**. This appeal requires us to decide whether the fifteen-year mandatory minimum term of imprisonment under 18 U.S.C. § 2251(e), as applied, violates the Eighth Amendment's prohibition on cruel and unusual punishment. For the reasons explained below, we conclude that it does not. Consequently, we affirm the judgment below.

The background facts can be succinctly summarized. The jury supportably could have found that defendant-appellant Byron Polk, over the course of some four months, engaged in online conversations with a person whom he presumed to be a thirteen-year-old girl. He pressured her to take and send to him sexually explicit photographs of herself.

The thirteen-year-old girl turned out to be an undercover police officer and, in due course, a federal grand jury indicted the defendant for attempting to produce child pornography. See 18 U.S.C. § 2251(a), (e). The evidence showed that, during the period when the online chats occurred, the defendant was physically afflicted and confined to a wheelchair. At trial, he characterized his offense as an isolated and harmless consequence of his disability and ensuing confinement. However, other evidence suggested that, at the time of these conversations, the defendant was engaging in sexually explicit discussions, in person or online, with three other underage girls.

The trial jury convicted the defendant of the charged offense. The presentence investigation report told a seamy story: it revealed an earlier conviction for aggravated sexual assault on a toddler, sexual involvement with teenage girls on at least two occasions, and yet another series of sexually charged computer chats with a minor. The defendant conceded these facts but objected to the statutory fifteen-year mandatory minimum sentence that he faced as cruel and unusual.

The district court found that the defendant had not accepted responsibility. See USSG §3E1.1. It set his total offense level at 36 and placed him in criminal history category I. These determinations — all of which are conceded on appeal — yielded a guideline sentencing range (GSR) of 188 to 235 months in prison.

The maximum penalty under the statute of conviction was thirty years and the mandatory minimum sentence was fifteen years. See 18 U.S.C. § 2251(e). The district court rejected the defendant's constitutional challenge, finding both the GSR and the prescribed mandatory minimum appropriate. The court proceeded to sentence the defendant to an incarcerative term of fifteen years, eight months. This timely appeal followed.

The customary appellate benchmark for measuring a sentence imposed by a district court is reasonableness. See United States v. Booker, 543 U.S. 220, 260-61 (2005); United States v.

Martin, 520 F.3d 87, 92 (1st Cir. 2008). But an Eighth Amendment challenge to an imposed sentence presents an abstract question of law and, thus, engenders de novo review. See United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007). Because the defendant premises his appeal exclusively on the proposition that his sentence offends the Eighth Amendment, the de novo standard of review applies in this case. See United States v. García-Carrasquillo, 483 F.3d 124, 132 (1st Cir. 2007).

We begin our analysis by noting an odd twist. The district court did not sentence the defendant to the mandatory minimum but, rather, to a term of years slightly in excess of it. This might seem to obviate the defendant's claim that the mandatory minimum sentence, as applied to him, violates the Eighth Amendment. Here, however, the sentence actually imposed was at the bottom of the GSR. The possibility exists that, but for the mandatory minimum, the GSR would have been more modest and the defendant's sentence would, accordingly, have been less. See Gall v. United States, 128 S. Ct. 586, 594 n.2 (2007) (noting that the Sentencing Commission chose to "key the Guidelines to the statutory minimum sentences"). In all events, the sentence actually imposed exceeded the mandatory minimum. For these reasons, we turn to the merits of the constitutional challenge.

In terms, the Eighth Amendment proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. Courts long have

-4-

interpreted this venerable phrase to encompass criminal sentences that are grossly disproportionate to the underlying offense. See, e.g., Solem v. Helm, 463 U.S. 277, 290-291 (1983); Weems v. United States, 217 U.S. 349, 381 (1910). Although most frequently applied in the context of capital crimes, see Kennedy v. Louisiana, 128 S. Ct. 2641, 2650 (2008); Atkins v. Virginia, 536 U.S. 304, 318 (2002); Woodson v. N. Carolina, 428 U.S. 280, 303-05 (1976), the principle of gross disproportionality also applies, albeit rarely, to sentences in non-capital cases. See Weems, 217 U.S. at 381-82; see also Harmelin v. Michigan, 501 U.S. 957, 997-98 (1991) (Kennedy, J., concurring) (emphasizing that, outside the sphere of capital punishment, the gross disproportionality principle is narrow and applies only to "extreme cases").

When confronted with an Eighth Amendment challenge under the Cruel and Unusual Punishments Clause, an inquiring court is tasked to consider three criteria: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem, 463 U.S. at 292. But there is a caveat: a comparative analysis is not compulsory. Id. at 291. The court need not mull the latter two criteria unless the sentence imposed crosses the threshold erected by the first; that is, unless the sentence, on its face, is grossly disproportionate to the crime. See Ewing v.

-5-

California, 538 U.S. 11, 23, 30-31 (2003); United States v. Cardoza, 129 F.3d 6, 18 (1st Cir. 1997).

We have recognized that instances of gross disproportionality will be hen's-teeth rare. United States v. Saccoccia, 58 F.3d 754, 788 (1st Cir. 1995). That is true because "[t]he Constitution does not require legislatures to balance crimes and punishments according to any single standard, or to achieve perfect equipoise." Id. When Congress has identified a particular scourge and, using reasoned judgment, articulated a response, courts must step softly and cede a wide berth to the Legislative Branch's authority to match the type of punishment with the type of crime. See Solem, 463 U.S. at 290. It is, after all, "Congress — not the judiciary — [which] is vested with the authority to define, and attempt to solve . . . societal problems." Saccoccia, 58 F.3d at 789.

Stern penalties are part of the legislative armamentarium, and their deployment does not in and of itself betoken cruel and unusual punishment. See Gore v. United States, 357 U.S. 386, 393 (1958). Moreover, "precise calibration of crime and punishment" is not part of the constitutional regimen. Saccoccia, 58 F.3d at 787. "The inherent nature of our federal system" necessarily produces "a wide range of constitutional sentences." Solem, 463 U.S. at 291 n.17.

Given the deference that courts owe to legislative judgments in the area of crime and punishment, it is predictable that most efforts to demonstrate gross disproportionality will fail. The case law bears out that verity. See, e.g., United States v. Frisby, 258 F.3d 46, 50 (1st Cir. 2001) (holding 151-month sentence for heroin distribution based on "career criminal" status not grossly disproportionate); Cardoza, 129 F.3d at 18 (holding 235-month sentence under Armed Career Criminal Act for possession of ammunition not grossly disproportionate); United States v. Graciani, 61 F.3d 70, 76 (1st Cir. 1995) (holding 280-month sentence for distribution of crack cocaine not grossly disproportionate).

Here, the defendant's challenge falters at the first step of the pavane: he has failed to show that his sentence is grossly disproportionate on its face to the crime of conviction. We explain briefly.

The offense of conviction is the attempted production of child pornography. As new means of communication have proliferated, child pornography has become a mounting societal problem. Consequently, Congress has expended a great deal of time, energy, and effort fine-tuning the penalties associated with the production of child pornography. Over the last three decades, it has mandated increasingly severe sanctions for that crime (whether consummated or attempted).

That has involved a progression from a maximum penalty of ten years in 1978, to a maximum of twenty years in 1996, to a maximum of thirty years in 2003. By the same token, Congress has progressed from no minimum penalty in 1978, to a minimum of ten years in 1996, to a minimum of fifteen years in 2003. See Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7, 7; Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, 3009-30; Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650, 653. This continuing escalation was based on a grim set of congressional findings to the effect that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." PROTECT Act, 117 Stat. at 676 (citations and internal quotation marks omitted). Congress has found such severe penalties necessary because child pornography is a "multimillion dollar industry" run by a "nationwide network of individuals" who "openly advertis[e] their desire to exploit children and to traffic in child pornography." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, 623.

The defendant makes three counter-arguments. First, he trivializes the gravity of the offense of conviction. His brief

reads as if there were no real distinction between, say, passing a bad check or owning child pornography, on the one hand, and attempting to violate a child by inducing her to participate in producing new pornography, on the other hand. But this effort to debunk the gravity of the offense is tantamount to whistling past the graveyard: despite the defendant's disdain, the offense of conviction is a serious crime.

In Congress's view — and that is the view that matters most — the production of child pornography is a profoundly serious matter. That is a reasonable value judgment, well within Congress's prerogative to make. <u>Saccoccia</u>, 58 F.3d at 789. Therefore, Congress was entitled to punish the offense heavily.

The defendant next argues that his crime was merely an attempt, not a fully consummated offense. That argument does not take him very far. Federal law historically has punished attempts on a par with the underlying substantive offenses. <u>See</u>, <u>e.g.</u>, 18 U.S.C. § 2423(e) (governing attempts to violate the Mann Act); 8 U.S.C. § 1324(1)(A) (governing attempts to violate the immigration laws). In all events, we are unable to discern anything amiss in Congress's desire to treat attempted crimes as analogous to completed crimes for purposes of punishment.

In our judgment, the absence of such a distinction has little, if any, bearing on the accused's culpability. By the same token, it has little, if any, bearing on the constitutionality of

the resultant sentence.  See United States v. Brown, 500 F.3d 48, 60 (1st Cir. 2007) (accepting the validity in a sentencing scheme of a congressional mandate "to treat inchoate offenses with as much gravity as the substantive offenses that underlie them"); cf. Hutto v. Davis, 454 U.S. 370, 374 (1982) (holding that imposition of a harsh sentence for possession of marijuana based on intent to distribute does not offend the Cruel and Unusual Punishments Clause of the Eighth Amendment).

The bottom line is simply this: Congress has made a reasonable legislative determination that a criminal who attempts to produce child pornography is as deserving of a stiff sentence as a criminal who actually succeeds in producing such smut.  There is no principled way that the Eighth Amendment permits us to second-guess that legislative judgment.

The last potential line of defense devolves from the fact that this case did not involve an actual child but, rather, an impersonator (an undercover police officer).  Here, however, the defendant has not claimed entrapment or police misconduct of any sort, and the government's use of undercover operatives as a tool to combat crime is well within the pale.  See, e.g., United States v. Brand, 467 F.3d 179, 181-82 (2d Cir. 2006); United States v. Santana, 6 F.3d 1, 5 (1st Cir. 1993).  Perhaps more important, the jury supportably found that the defendant believed his correspondent to be a thirteen-year-old girl and intended to

extract sexually explicit photographs from her.  Given the jury's verdict, the defendant cannot be heard to complain that his mistake of fact absolves him of criminal responsibility.  See United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006); United States v. Cotts, 14 F.3d 300, 307 (7th Cir. 1994).  On the same reasoning, we think that his mistake of fact cannot tip the Eighth Amendment balance in his favor.

Because we find no gross disproportionality between the fifteen-year mandatory minimum term of imprisonment established by 18 U.S.C. § 2251(e) and the offense of which the defendant stands convicted, we need go no further.  The defendant's Eighth Amendment challenge fails.

**Affirmed**.