# United States Court of Appeals
## For the First Circuit

No. 10-2346

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES RAYMOND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Howard, Ripple[*] and Selya,
Circuit Judges.

Richard L. Hartley, with whom Law Office of Richard Hartley was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Richard W. Murphy, Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, and Thomas E. Delahanty II, United States Attorney, were on brief, for appellee.

October 10, 2012

[*]Of the Seventh Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  A federal grand jury in the District of Maine handed up an indictment that charged an elementary-school music teacher with two counts of transporting a minor with intent to engage in criminal sexual activity.  See 18 U.S.C. § 2423(a).  Following a bench trial, the district court found the teacher guilty and imposed a twelve-year incarcerative sentence.  The teacher appeals.  After careful consideration of this tawdry tapestry, we affirm.

## I.  BACKGROUND

Because the conviction in this case followed a bench trial, we rehearse the facts as supportably found by the district court.  See United States v. Raymond, 710 F. Supp. 2d 161, 162-64 (D. Me. 2010).

From 2003 to 2007, defendant-appellant James Raymond, a 29-year-old man, toiled as an elementary-school music teacher in Auburn, Maine.  On two different occasions in July and August of 2007, he invited an eleven-year-old pupil and her nine-year-old sister to Canobie Lake Park, an amusement park in Salem, New Hampshire.  On each occasion he drove the girls, unaccompanied by any other adult, from their family's home in Maine to the park.

The district court found that at least one of the defendant's motives for these trips was "sexual contact with the eleven-year-old if the opportunity should arise."  Id. at 162-63.  During the July trip, the defendant touched the eleven-year-old's

buttocks three times.  Id. at 162.  He apologized each time that this occurred.  During the August trip, the defendant touched the eleven-year-old's buttocks once again.  Id. at 163.  The district court determined that the buttocks-touching incidents were intentional and carried out for the purpose of sexual gratification.  Id. at 162-64.

In adjudging the defendant guilty, the district court attached decretory significance to four pieces of evidence: the victim's testimony; other students' testimony about a June 2007 school-sponsored bus trip to Canobie Lake during which they observed the defendant rubbing his hand on the victim's legs; the testimony of another young girl who stated that the defendant "touched her buttocks under her skirt at school" in October 2007;[1] and a videotaped interview with police in which the defendant discussed "his physical urge to touch young girls' buttocks" and his habit of "masturbating once or twice a week about kids."  Id. at 163 (internal quotation marks omitted).  With respect to the June 2007 bus trip, the court also noted that the victim herself testified that the defendant "put his hand inside her shirt on her belly and . . . on the back of her leg toward her butt."  Id.

Following the defendant's conviction, the probation department prepared a presentence investigation report (PSI

_____

[1] This conduct ultimately led to a state-court conviction for two counts of unlawful sexual touching and three counts of assault.

Report).  The final version of the PSI Report set the advisory guideline sentencing range (GSR) at 262 to 327 months.  The district court imposed a below-the-range prison sentence of twelve years.  This timely appeal ensued.

## II.  ANALYSIS

In this venue, the defendant advances three claims of error.  We discuss these claims sequentially.

### A.  Rule 404(b) Evidence.

The defendant argues that the district court improperly admitted evidence of both his contact with the victim during the June 2007 bus trip and his inappropriate conduct with another young girl in October of that year.[2]  The admission of both of these pieces of evidence implicates Federal Rule of Evidence 404(b) and engenders review for abuse of discretion.  United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000).

At the time of the defendant's trial in 2010, Rule 404(b) provided:[3]

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for

_____

[2] Although the defendant's brief extends this argument to testimony that was admitted concerning yet another young girl, the district court did not rely on any such testimony in adjudicating the defendant's guilt.  We limit our discussion accordingly.

[3] Rule 404(b) was amended effective December 1, 2011.  The changes are entirely stylistic.  See Fed. R. Evid. 404 advisory committee's note.

-4-

> other purposes, such as proof of motive,
> opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake or
> accident . . . .

The admission of prior bad acts evidence in this case fits within the confines of Rule 404(b). We explain briefly.

The statute of conviction provides in relevant part:

> A person who knowingly transports an
> individual who has not attained the age of 18
> years in interstate . . . commerce, . . . with
> intent that the individual engage . . . in any
> sexual activity for which any person can be
> charged with a criminal offense, shall be
> [punished as provided by law].

18 U.S.C. § 2423(a). Under this statute, the government does not need to prove an exclusive intent to engage in the proscribed activity. It suffices if such an intent is one of the purposes of the interstate transportation. United States v. Ellis, 935 F.2d 385, 390 (1st Cir. 1991).

In the case at hand, the district court found that the defendant's activities were chargeable under both New Hampshire law and Maine law. See Raymond, 710 F. Supp. 2d at 166-67 (citing N.H. Rev. Stat. Ann. §§ 632-A:3(III), 632-A:1(IV) and Me. Rev. Stat. Ann. tit. 17-A, §§ 260(1)(C), 251(1)(G)). Moreover, there was no question that the trips with the victim and her younger sister actually occurred; the defendant conceded as much. The pivotal issue, then, was the defendant's intent.

With this in mind, the government asked the court in a pretrial motion, see Fed. R. Evid. 404(b) (mandating advance notice

of the government's intention to offer Rule 404(b) evidence in a criminal case), for leave to present Rule 404(b) evidence (including the evidence about which the defendant complains on appeal). The government maintained that this evidence tended to show the defendant's intent to engage in unlawful sexual activity during the July and August 2007 trips.

The defendant opposed this proffer. The court overruled the defendant's objection in relevant part and authorized the government to offer the testimony challenged on appeal. It is this ruling that the defendant now assails.

There is, however, a threshold question. The government insists that the defendant failed to preserve his right to challenge this evidence on appeal because he did not renew at trial his objection to its admissibility. We addressed a similar question in United States v. Griffin, 818 F.2d 97 (1st Cir. 1987). There, we concluded that, in order to preserve a challenge to an evidentiary ruling for appeal, "a party must obtain the order admitting or excluding the controversial evidence in the actual setting of the trial," even if a conditional pretrial ruling was previously made. Id. at 105. We reached this conclusion by analogy to Luce v. United States, 469 U.S. 38 (1984), in which the Supreme Court held that "to raise and preserve for review [a] claim of improper impeachment with a prior conviction, a defendant must testify" at trial, notwithstanding an earlier in limine ruling.

Id. at 43.  Griffin is still good law: "[i]t is settled in this circuit that, when the district court tentatively denies a pretrial motion in limine, or temporizes on it, the party objecting to the preliminary in limine determination must renew his objection during the trial, and the failure to do so forfeits any objection." United States v. Noah, 130 F.3d 490, 496 (1st Cir. 1997); accord United States v. Joost, 133 F.3d 125, 129 (1st Cir. 1998).[4]

In this instance, the defendant has eschewed any response to the government's argument that the pretrial ruling, by itself, failed to preserve his claim of error.  The reason for the defendant's silence is obvious: the pretrial ruling was not definitive, see supra note 4, and the defendant was therefore obliged to object, on pain of forfeiture, when the government sought to introduce the challenged evidence at trial.  Because he did not do so, his claim of error is forfeit.

Of course, even forfeited claims may be reviewed for plain error.  Puckett v. United States, 556 U.S. 129, 134-35 (2009).  Here, however, there was no error, plain or otherwise.

---

[4] "To be sure, there may be instances where a trial court's ruling on an in limine motion, taken in context, is definitive enough to excuse omission of an objection on the point at trial." Freeman v. Package Mach. Co., 865 F.2d 1331, 1337 (1st Cir. 1988). But to animate this exception, the pretrial ruling ordinarily must be final, given "either [] the nature of the judge's words, or [] the rationale of [the] ruling, or [] both."  United States v. Holmquist, 36 F.3d 154, 166 n.12 (1st Cir. 1994).  Here, the pretrial ruling lacked finality; the district court explicitly stated that it would reconsider its ruling "if the evidence as it actually comes in" did not pass muster under Rule 404(b).

Even if the defendant had preserved his claim for review, the district court did not abuse its discretion in allowing the challenged evidence. While bad acts evidence may not be admitted either to show a defendant's deplorable character or his propensity to act in unattractive ways, such evidence is admissible to show, among other things, his intent and the absence of mistake. See Fed. R. Evid. 404(b).

The Supreme Court has explained that, in evaluating the admissibility of Rule 404(b) evidence, a court initially must decide whether the evidence submitted "is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). To implement this directive, we have required that Rule 404(b) evidence be shown to "have special relevance to an issue in the case such as intent or knowledge." Varoudakis, 233 F.3d at 118 (internal quotation marks omitted). In evaluating this showing, the timing of the proffered bad act and its degree of resemblance to the conduct charged in the case are relevant considerations. See id. at 119.

We hasten to add that special relevance is a necessary but not a sufficient condition for the admissibility of Rule 404(b) evidence. Such evidence also must pass through the filter of Federal Rule of Evidence 403, which demands that the probative value of the evidence must substantially outweigh any danger of unfair prejudice. Fed. R. Evid. 403. This balancing is best

performed by the trial judge, who has an intimate familiarity with the ebb and flow of the case and with its nuances. When the trier has determined that evidence satisfies Rule 403, "[o]nly rarely — and in extraordinarily compelling circumstances — will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988).

The evidence in question here satisfies the foundational requirements for Rule 404(b) evidence. The first benchmark is that the finder of fact "can reasonably conclude that the act occurred and that the defendant was the actor." Huddleston, 485 U.S. at 689. That benchmark is satisfied: the court below deemed the proffered testimony credible, and the record casts no doubt on the reasonableness of that finding. Although the defendant argues that the evidence "was fragile and insufficient," he does not explain how or why. Where the trial court sits as the factfinder, judgments about witness credibility are ordinarily within its exclusive province, see, e.g., United States v. Pontoo, 666 F.3d 20, 27 (1st Cir. 2011), and we discern no reason to depart from that salutary principle here.

The next benchmark is likewise satisfied: the proffered evidence was specially relevant. The defendant suggested that the touchings were accidental, see, e.g., Raymond, 710 F. Supp. 2d at

162, and the evidence tended to show the absence of mistake. In other words, the testimony was not introduced to prove that the defendant was a predator but, rather, to shed light upon his intent during the July and August excursions. To cinch matters, the events chronicled in the challenged testimony were not only proximate in time, but also bore a strong resemblance to the charged conduct.[5]

Last — but far from least — the challenged testimony survives Rule 403 balancing. The defendant's intent was a critical issue at trial, and the challenged evidence packed a punch on that issue. Simply throwing dysphemisms at a piece of evidence does not diminish its probative force, cf. Christian Recorder — Proverbs (Mar. 22, 1862) ("Sticks and stones will break my bones, but words will never harm me."), and the evidence at issue here was highly probative.

The defendant laments the prejudicial effect of this evidence, but he makes no showing of unfairness sufficient to counteract its substantial probative value. The mere fact that evidence is prejudicial does not trump the need for Rule 403 balancing: "By design, all evidence is meant to be prejudicial; it

---

[5] The court below was sensitive to the importance of temporal proximity and shaped its pretrial ruling accordingly. For example, it excluded evidence of a 2005 incident involving other young girls out of concern that the incident was "much more remote in time and more likely to be used . . . as mere character or propensity evidence, which is forbidden."

is only <u>unfair</u> prejudice which must be avoided." <u>United States</u> v. <u>Rodriguez-Estrada</u>, 877 F.2d 153, 156 (1st Cir. 1989) (emphasis in original).

It is worth noting that the district court exhibited commendable sensitivity to the potential for unfair prejudice. It went to great lengths in an effort to establish a Rule 404(b) equilibrium. For example, in ruling on the scope of testimony of the defendant's character witnesses, the court indicated that it would allow testimony by a parent that the defendant never touched her child.

That ends this aspect of the matter. We conclude that the defendant forfeited his Rule 404(b) claim of error; and that, in all events, the district court did not abuse its discretion in admitting evidence either of the bus trip or of the defendant's inappropriate conduct with another underage girl.[6]

## B. **Cross-Examination**.

The defendant's next claim of error is premised on the notion that the district court improperly restricted his cross-examination of Detective Chad Syphers (a government witness).

---

[6] It is at least arguable that, in a bench trial, a district court has wider latitude in the admission of Rule 404(b) evidence. <u>Cf.</u> <u>Gulf States Utils. Co.</u> v. <u>Ecodyne Corp.</u>, 635 F.2d 517, 519 (5th Cir. 1981) (suggesting that "Rule 403's weighing of probative value against prejudice . . . has no logical application to bench trials"). Given the patent admissibility of the evidence challenged here, we need not probe this point.

Syphers was the officer who questioned the defendant in October of 2007. In that videotaped interview, the defendant made admissions that the district court found telling. See Raymond, 710 F. Supp. 2d at 163. The defendant claims that the court improperly truncated his cross-examination of this key witness and, thus, foreclosed his opportunity to put the admissions in a less unattractive light.

We review de novo the preliminary question of whether a defendant, in conducting cross-examination, was afforded a reasonable opportunity to impeach the witness. United States v. Martínez-Vives, 475 F.3d 48, 53 (1st Cir. 2007). We review for abuse of discretion any limitations that the trial court imposed on that reasonable opportunity. Id.

A defendant's right to cross-examine adverse witnesses has its genesis in the Confrontation Clause of the Sixth Amendment. See U.S. Const. amend. VI, cl. 2; see also United States v. Ofray-Campos, 534 F.3d 1, 36 (1st Cir. 2008). But the fact that the right of cross-examination is anchored in constitutional terrain does not give the cross-examiner carte blanche to ask whatever he pleases whenever he pleases. A trial court possesses a considerable margin of discretion to impose reasonable limits on cross-examination. Martínez-Vives, 475 F.3d at 53. Once such limits are imposed, they can be overturned on appeal only if the

reviewing court finds them to be both unreasonable and prejudicial. See id.

In this case, the defendant asseverates that Syphers exhibited two different strains of bias: a belief that all sex offenders act similarly, and a belief that all sex offenders graduate from less serious to more serious offenses. These biases, the defendant says, combined to create a coercive interview environment that impinged upon the voluntariness of his videotaped statements, and the district court unfairly hampered his inquiry into this subject.

The record reflects that the district court allowed the defendant free rein to inquire into the first strain of bias. But when defense counsel asked Syphers about whether sex offenders typically displayed a pattern of graduating from less serious to more serious offenses, the court sustained an objection, reasoning that the videotape of the interview was offered for the defendant's statements, not for Syphers's state of mind. It is this ruling that draws the defendant's ire.

The trial transcript makes manifest that the court afforded the defendant a reasonable opportunity to cross-examine Syphers. It gave the defendant considerable time and latitude to pursue the question of bias. The resultant cross-examination was both searching and far-flung. In particular, defense counsel was permitted, both before and after the sustained objection, to ask

about Syphers's interview technique. Based on this extensive cross-questioning and on the videotape itself, the court expressed an awareness that Syphers, in the course of the interview, "said whatever he had to say to get the answer he want[ed]." Further cross-examination hardly could have done more to expose the witness's bias.

To say more on this subject would be to paint the lily. Cross-examination does not present a defendant with an endless opportunity to probe into an adverse witness's thoughts and actions. Here, the trial court gave the defendant leeway to test the witness's purported bias in a variety of ways. The fact that the court did not yield to every entreaty of the cross-examiner does not, without more, constitute an abuse of discretion. In this instance, there was no "more."

### C. Sentencing.

The defendant's final plaint is that the district court erred in imposing a twelve-year incarcerative sentence. In the defendant's view, the court should not have sentenced him to more than the ten-year statutory minimum. See 18 U.S.C. § 2423(a).

Although the defendant's sentencing argument is not a model of clarity, the prohibition on cruel and unusual punishment, see U.S. Const. amend. VIII, is the dominant theme. We review

-14-

Eighth Amendment challenges to imposed sentences de novo. United States v. Polk, 546 F.3d 74, 75 (1st Cir. 2008).

A sentence comprises cruel and unusual punishment if it is "grossly disproportionate to the underlying offense." Id. at 76. The threshold inquiry weighs the "gravity of the offense and the harshness of the penalty." Solem v. Helm, 463 U.S. 277, 290-91 (1983). If this initial weighing does not reveal gross disproportionality, the inquiry ends there, and a reviewing court need not undertake a comparative analysis. See Ewing v. California, 538 U.S. 11, 23 (2003). This is a daunting standard, and "most efforts to demonstrate gross disproportionality will fail." Polk, 546 F.3d at 77.

The defendant's sentence is not grossly disproportionate to the offenses of conviction. The crimes were serious; they involved the repeated touching for sexual gratification of an eleven-year-old girl entrusted to the defendant's care and supervision. Molestation of a young girl is not a trivial matter.

The punishment meted out by the sentencing court, though severe, was not Draconian. The GSR (which the defendant does not challenge) is 262 to 327 months, and the court sentenced the defendant to a term of imprisonment substantially below the bottom of this range. In these circumstances, we do not think that any fair-minded person could consider a twelve-year sentence to be grossly disproportionate.

-15-

Under the advisory guidelines, a sentence in a criminal case must be substantively reasonable.  <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 261 (2005); <u>United States</u> v. <u>Clogston</u>, 662 F.3d 588, 592-93 (1st Cir. 2011).  We do not believe that the defendant has developed an argument challenging his sentence under this standard. In an abundance of caution, however, we have examined the sentence for reasonableness.  Based on much the same considerations as discussed above, we conclude, without serious question, that the sentence is substantively reasonable.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the defendant's conviction and sentence.

**<u>Affirmed</u>**.