# United States Court of Appeals
## For the First Circuit

No. 21-1591

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER RAICHE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Gelpí, Howard, and Thompson,
Circuit Judges

Stephen C. Smith for appellant.
Nicholas S. Heimbach, Assistant United States Attorney, with
whom Darcie N. McElwee, United States Attorney, was on brief, for
appellee.

October 6, 2022

**GELPÍ**, **Circuit Judge**. This case asks us to determine whether an eighty-year sentence for a 41-count indictment on child pornography charges violates the Eighth Amendment's prohibition on cruel and unusual punishment. U.S. Const. amend. VIII. For the reasons outlined below, we conclude this sentence does not amount to a violation and affirm the district court's judgment.

**Background**

We begin with the facts pertinent to this sentencing appeal and note that they are highly sensitive in nature.[1] On October 16, 2019, the National Center for Missing and Exploited Children received a complaint from Yahoo!'s parent company, Oath Holdings, Inc., that a user had uploaded 270 images and/or videos depicting the sexual exploitation and abuse of children. The Maine State Police Cyber Crimes Unit and U.S. Department of Homeland Security investigated the case and identified the account as belonging to Christopher Raiche ("Raiche"). Investigators found that from January 2018 through October 2019, Raiche took sexually explicit photos of at least nine children (male and female) under the age of ten. To reach these children, he responded to Craigslist advertisements requesting childcare services and

---

[1] This appeal follows a guilty plea, thus the facts are drawn from the Revised Presentence Investigation Report ("PSR") and sentencing hearing, which Raiche at no point contested. See United States v. Blodgett, 872 F.3d 66, 68 (1st Cir. 2017) (citations omitted).

befriended a co-worker who needed a babysitter for her grandchildren. The day before his arrest, Raiche also posted a Craigslist advertisement claiming to have "10+ years of experience in childcare," noting he had been dealing with children from "newborn to 13 years." In total, Raiche obtained access to four different families and sexually exploited at least nine children -- Minors A, B, C, D, E, F, G, H, and I. In addition to these nine children, Raiche also harmed many other minors, who remain unidentified, by distributing, receiving, promoting, and possessing child pornography with their images. We discuss Raiche's conduct as it relates to these children in turn.

**Minors A, B, and C**

Minors A, B, and C were all under age six at the time that Raiche took sexually explicit photos of them. He met them by obtaining their grandmother's trust so that he could babysit them. The images he produced depict the children's groin and vulva. In some images, his hand is seen pulling their undergarments to the side, or their diaper undone, to expose their genitals. In others, his finger or thumb is placed directly on the child's vulva. Raiche distributed these images via emails in June 2018, August 2018, October 2018, December 2018, August 2019, and September 2019,

solicited similar images from others, and sought access to child pornography albums in exchange for his photos.[2]

**Minors D and E**

Minors D and E were between the ages of two and four when they were under Raiche's care.  He found them by responding to a Craigslist advertisement for childcare.  He babysat them approximately three nights a week from October to December 2018.  Again, Raiche produced images of the children's genitals.  These images were emailed to solicit child pornography and/or uploaded to an online photo sharing website commonly used to trade child pornography from October to December 2018.

**Minors F and G**

Minors F and G were also between the ages of two and four at the time of the offense.  Raiche reached them when their father requested his childcare services.  The images depict Raiche posing the children to photograph their private areas.  These images were distributed via email in September and October of 2019,

---

[2] One of Raiche's emails reads:

> Hello.  I would love to trade [child pornography].  I have tons of it.  Below is just a couple of photos.  I have lots more if you will show me some of what you have.  This is my own daughter.  I have tons of boys too. Let me know.  I'm also on Mega at a different email.  Let me know either way please.

including a message lamenting that one of the minors would not allow him to take more graphic images.[3]

**Minors H and I**

Minors H and I were between the ages of six and nine when Raiche reached them. The Revised PSR does not specify how Raiche came to know them. The images also depict Raiche posing the girls to photograph their private areas. In one image, Raiche's hand is seen pulling the girl's underwear to the side to expose her vulva. The images were taken between January and June 2018 and were distributed via email to solicit child pornography in June 2018.

**Additional Minors**

Beyond the sexual exploitation of Minors A, B, C, D, E, F, G, H, and I (counts 1 through 4 of the indictment), Raiche also pled guilty to numerous counts of advertising, promoting, and soliciting obscene depictions of minors as well as transporting, possessing, and receiving child pornography involving numerous unnamed children. More specifically, Raiche distributed a specific video in July and twice in August 2019 depicting an adult male vaginally penetrating a three- to five-year-old girl with a

---

[3] The email message reads: "Pictures? Couldn't get graphic ones of the girl. She wouldn't let me. But here is the best :) I got hope you enjoy."

graphic message[4] relaying his own sexual abuse of a child. Moreover, Raiche distributed a minimum of 270 images and/or videos via his email account (likethemyoung@yahoo.com) and used a cloud storage hosting service to distribute more. His child pornography collection contained 61 identified series which were comprised of 22 images and 127 video files which equate to a total of 9,525 images (surpassing the sentencing guidelines' 600-image threshold to apply the highest-level sentencing enhancement based on the number of images). The forensic report further noted that Raiche viewed approximately 124,189 images/videos (though it did not note the specific number identified as child pornography) and more than 484 images were flagged as related to his production of child pornography. Beyond mere possession, Raiche also received

---

[4] The message reads:

> damn that one was so hot :) thank you for that. The only thing I've been able to do with a girl is rub my dick against her pussy until I came. Also able to lick her out and play doctor with her. Enjoy these ones. Look forward to receiving some more from you :).

In a subsequent email Raiche writes:

> Hey. I would love to trade pics and vids with you. I have a ton. Would love to see more pics and vids of that girls you have on imgsrc.ru. She is sexy and would love to see under those panties :) Anyways. Hope you enjoy what I have. This is just a small sample. If you have Mega I have more on there too. Let me know. Look forward to hearing from you :).

numerous images and videos of child pornography including depictions of the sexual abuse of prepubescent girls, the sexual abuse and exploitation of boys, and children engaging in sexual acts. The children depicted range from toddler to twelve years old.

On January 14, 2020, an arrest warrant was issued for Raiche after he was named in a two-count complaint filed in the United States District Court in Bangor, Maine, charging one count of sexual exploitation of a child and one count of distribution of child pornography. He was placed in federal custody on February 24, 2020. On July 30, 2020, he was charged in a 41-count indictment with the following: four counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), (e); thirteen counts of transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1), (b)(1), 2256(8)(A); seventeen counts of advertising, promoting, and soliciting obscene depictions of a minor in violation of 18 U.S.C. § 2252A(a)(3)(B), (b)(1); one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), 2256(8)(A); and six counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1), 2256(8)(A). Raiche pled guilty to all counts on December 18, 2020.

**Presentence Investigation Report**

The United States Office of Probation and Pretrial Services prepared a PSR, and a revised version, in advance of sentencing. Raiche does not dispute the sentencing guidelines calculations in the Revised PSR. The report grouped counts 1 through 4 of the indictment and recommended enhancements for the following: offense involving a minor who had not attained the age of twelve years; image involving the commission of a sexual act or sexual contact as defined in 18 U.S.C. § 2246(2), (3); knowingly distributing images; offense involving a minor under the care and custody of the defendant as a caretaker/babysitter; and material portraying sadistic or masochistic depictions or an infant or toddler. Similarly, for counts 5 through 41 of the indictment, the Revised PSR recommended enhancements for the following: material involving prepubescent minors or minors who had not attained the age of twelve years; distribution for pecuniary gain; material portraying sadistic or masochistic conduct or other depictions of violence or an infant or toddler; engagement in a pattern of activity involving sexual abuse or exploitation of a minor; the use of a computer or service for possession, distribution and receipt of material; and the involvement of more than 600 images of child pornography.

Further, the Revised PSR enhanced the combined adjusted offense level based on the defendant being a repeat and dangerous

sex offender against minors.  Finally, the offense level was reduced based on Raiche's acceptance of responsibility and timely notification of intent to enter a guilty plea.  The total offense level was ultimately the maximum of 43, producing a guideline range of life.  The Revised PSR recommended a sentence up to 8,640 months or 720 years.

We need not discuss the circumstances that might have led Raiche to commit these crimes, but we do note that the Revised PSR acknowledged that Raiche was likely not given the same advantages that might help a person -- in the district court judge's words -- "orient one's life in a productive and law abiding way."  "As is not unusual in these cases," Raiche's upbringing was trying.  United States v. Gross, 437 F.3d 691, 691 (7th Cir. 2006). He reports becoming a ward of the State of Vermont at eighteen months of age given that his mother was addicted to drugs and had a history of incarceration.  He bounced from foster home to foster home as a child and was physically and sexually abused at an early age.

**Sentencing Hearing**

Raiche was sentenced on July 29, 2021.  At the time, he was thirty.  The district court judge, having "read and reread and reread again the revised presentence report," set the total offense level at 43 and placed Raiche in criminal history category I, since he had no prior criminal history.  The government recommended

- 9 -

sixty-five to one hundred years, ultimately concluding that eighty years was appropriate, while Raiche argued that a thirty-to-thirty-five-year sentence was more suitable.

The judge considered "the seriousness of the offense," the importance of "promot[ing] respect for the law," the lack of "advantages" Raiche had to orient his life, the fact that Raiche "accepted responsibility in a formal way," and ultimately concluded that "the animating intellectual feature" in the sentence he imposed "should be aimed toward specific deterrence, deterring [Raiche] from hurting any other members of the community." With that in mind, the judge imposed an eighty-year sentence, assigning 210 months, or 17.5 years, to counts 1 through 4, and 120 months, or 10 years, for counts 5 to 41, to run consecutive to counts 1 to 4, but concurrent with one another. Finally, the district court judge ordered supervised release for a term of life. This timely appeal followed.

**Standard of Review**

For our purposes, we apply the defendant-friendly de novo standard to Raiche's sentence as this is an abstract question of law and the argument appears to have been preserved. United States v. Rivera-Ruperto, 852 F.3d 1, 16 (1st Cir. 2017); see also United States v. Polk, 546 F.3d 74, 75 (1st Cir. 2008) (citing United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007))

- 10 -

(outlining that Eighth Amendment challenges warrant de novo review).

The government contends that this sentence should be subject to plain error review because the Eighth Amendment claim was not properly preserved. Nevertheless, at the sentencing hearing, Raiche's counsel specifically stated that "if the Court accepts the Government's recommendation, it will sentence Mr. Raiche far more harshly than even a murder case after a trial" and that because he was thirty years old at the time of sentencing, "he is not going to see daylight." We consider this proportionality reference sufficient for purposes of preservation. See Rivera-Ruperto, 852 F.3d at 16 n.18 (noting that counsel's argument that the punishment imposed would go "way over, substantially way over, what's necessary for punishing these offenses," and would lead to a "horribly, horribly increased sentence which borderlines on draconian," was sufficient to warrant de novo review).

**Discussion**

Raiche's sole argument on appeal is that the total length of his term-of-years sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment because it is grossly disproportionate to his offenses. While we acknowledge that Raiche's eighty-year sentence is extensive, we ultimately hold

that it is not one of the "rare" circumstances in which we will find a constitutional violation. Polk, 546 F.3d at 76.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. We have found that a sentence is cruel and unusual if it is "grossly disproportionate to the underlying offense." Polk, 546 F.3d at 76. When considering an Eighth Amendment challenge, this court considers "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). However, we only reach the last two criteria if, as a threshold matter, "the sentence, on its face, is grossly disproportionate to the crime." Polk, 546 F.3d at 76.

We note at the outset that Raiche faces an uphill battle in establishing a constitutional violation because the "Eighth Amendment gives rise to a 'narrow proportionality principle,' . . . forbidding only extreme sentences that are significantly disproportionate to the underlying crime." United States v. Graciani, 61 F.3d 70, 76 (1st Cir. 1995) (quoting Harmelin v. Michigan, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring)); see also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) ("The gross disproportionality principle reserves a constitutional

- 12 -

violation for only the extraordinary case."). As such, successful challenges under the Eighth Amendment are "hen's-teeth rare." Polk, 546 F.3d at 76. Moreover, for non-capital cases, the Eighth Amendment "does not require a precise calibration of crime and punishment." Graciani, 61 F.3d at 76.

## A.

In considering whether the sentence imposed violates the Eighth Amendment, "[w]e first address the gravity of the offense compared to the harshness of the penalty." Ewing v. California, 538 U.S. 11, 28 (2003). Raiche concedes that "the gravity of the offense is severe," but contends that it was not so severe that it can be considered "some of the most heinous conduct that can be undertaken." In so arguing, Raiche utterly underestimates the gravity of his crimes.

To determine the gravity of his conduct, we look to congressional findings on child pornography in addition to precedent. Congress has made its views on the subject clear. It has determined that the receipt, transportation, distribution, and production of child pornography is an overwhelmingly serious matter that "is harmful to the physiological, emotional, and mental health of the children depicted . . . and has a substantial and detrimental effect on society as a whole." Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, § 501, 120 Stat. 587, 623. While any one of these crimes

amounts to a serious offense, Raiche pled guilty to forty-one counts, amounting to a substantial involvement in a "multimillion dollar industry," id., that Congress is determined to "stamp[] out . . . at all levels in the distribution chain." Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 501, 117 Stat. 650, 676 (citing Osborne v. Ohio, 495 U.S. 103, 110 (1990)). In fact, Congress has determined that child pornography crimes are so offensive that "[o]ver the last three decades [80s, 90s, 00s], it has mandated increasingly severe sanctions." Polk, 546 F.3d at 77.

Moreover, while Raiche's involvement at each level of the child pornography distribution chain is concerning, Raiche's sexual exploitation of minors is particularly troubling. In United States v. Raymond, we upheld a twelve-year sentence against an elementary-school teacher after he transported and touched an eleven-year-old child for the purpose of sexual gratification. 697 F.3d 32, 35 (1st Cir. 2012). We made clear that his "crimes were serious" as "[m]olestation of a young girl is not a trivial matter." Id. at 41. As in Raymond, Raiche too abused his position of trust as a babysitter for his own sexual gratification. He preyed on one of the most vulnerable groups in society -- defenseless children under the age of ten years old who were placed in his care. Rather than care for these minors, Raiche gleefully

unclothed them, removed their diapers, touched their most private areas, photographed their genitals, and enthusiastically traded these images for others. In doing so, Raiche "stimulat[ed] demand in the interstate market in child pornography." Adam Walsh Act § 501, 120 Stat. at 624.

Raiche did not stop after one victim, nor did he stop after one family. Instead, he created depictions of his own sexual exploitation of at least nine different children from four different families. And that is not all. The day before his apprehension, Raiche posted a Craigslist advertisement for his supposed childcare services illustrating a resolve to continue to exploit innocent victims. The harm he caused each of these minors and their relatives simply cannot be overstated as "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Id. As the district court acknowledged, "it's difficult, if not impossible, to overstate the darkness that [Raiche] visited on these victims, but the chain of events that [he] likely set into motion that will cause periodic and probably regularly pain and tragedy for a long time." Indeed, Raiche's numerous crimes are so reprehensible that "[l]ike a defamatory statement, each new publication of the speech w[ill] cause new injury to the child's reputation and emotional well-being." Ashcroft v. Free Speech Coal., 535 U.S. 234, 249 (2002). Raiche's

- 15 -

scheme has left behind a trail of destruction that will all too likely "haunt[] the children in years to come." Osborne, 495 U.S. at 111 (citation omitted); see also New York v. Ferber, 458 U.S. 747, 758 n.9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." (citing Schoettle, Child Exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980))). As such, it is simply not "possible to overstate the depth of that tragic loss of innocence."

Raiche acknowledges that "[t]he patent awfulness of his actions is self-evident" but argues that his crimes are not so severe because they did not involve penetration. We agree with the Fourth Circuit and "reject out of hand the notion that the sexual abuse of a child can be considered nonviolent merely because it does not lead to physical or life-threatening injuries." United States v. Dowell, 771 F.3d 162, 169 (4th Cir. 2014). Whether Raiche did or did not penetrate his victims, the fact remains that his "acts of abuse inflicted injuries that may run deeper and last longer than any physical injuries . . . ." Id.

Congress agrees. It has determined that sexual exploitation -- even without penetration or death -- is so blameworthy as to require fifteen to thirty years of imprisonment. 18 U.S.C. § 2251(a), (e). By sharing such content online, Raiche

made his sexual exploitation of prepubescent children "readily available through virtually every Internet technology, including Web sites, email, instant messaging, Internet Relay Chat, newsgroups, bulletin boards," etcetera, for decades to come. Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 101, 122 Stat. 4001, 4001. As such, we are hard pressed to deny that Raiche's conduct is some of the most reprehensible this court sees.

**B.**

Having discussed the gravity of the offense, we now turn to the severity of the sentence imposed. Raiche received an eighty-year sentence, amounting to a fraction of the 720 years recommended in the guideline range. As described above, this included four counts of sexual exploitation of a child (carrying a fifteen-year statutory minimum and thirty-year maximum); thirteen counts of transportation of child pornography (carrying a ten-year statutory maximum); seventeen counts of advertising, promoting, and soliciting obscene depictions of a minor (carrying a five-year statutory minimum and twenty-year maximum); one count of possession of child pornography (carrying a ten-year statutory maximum); and six counts of receipt of child pornography (carrying a five-year statutory minimum and twenty-year maximum). The guideline imprisonment range was life but, given statutorily

authorized maximum sentences, the Revised PSR recommended a sentence up to 720 years.

We begin by acknowledging that Raiche's eighty-year sentence is indeed extensive. Depriving an individual of the opportunity to, at some point, participate in society is a matter of grave sensitivity. An eighty-year sentence means that Raiche will not be released from custody until he is beyond 100 years of age, in other words, beyond the average life span of a human being. Put simply, it is highly likely that Raiche will die in prison rendering his sentence a de facto life sentence. We do not take the imposition of such an extensive sentence lightly.

Raiche argues that his sentence is so severe as to compel a finding of gross disproportionality for two main reasons. First, he asserts that his home state of Maine has sentenced people who have committed murder to shorter terms of imprisonment. Second, he contends that he has received a sentence on par with federal sentences for those convicted of genocide, using a chemical weapon resulting in the death of another, assassinating the president, and murdering a child. However, these comparisons are unavailing. "[M]arked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable . . . result of the federal structure." Harmelin, 501 U.S. at 999 (Kennedy, J., concurring). Maine's penological goals and philosophies cannot so easily be compared to our federal system.

Congress has acknowledged that child pornography sentences should be severe and legislated the imposition of statutory minimums for some of these heinous acts. In Congress's view, "[t]he most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." PROTECT Act § 501, 117 Stat. at 676 (quoting Ferber, 458 U.S. at 760). Moreover, "[w]hen Congress has identified a particular scourge and, using reasoned judgment, articulated a response, courts must step softly and cede a wide berth to the Legislative Branch's authority to match the type of punishment with the type of crime." Polk, 546 F.3d at 76 (citing Solem, 463 U.S. at 290).

Nevertheless, congressional action is still subject to the Constitution's prohibition on cruel and unusual punishment. The issue becomes whether this severe sentence is grossly disproportionate to Raiche's grave acts given our jurisprudence. We hold that it is not.

"The Supreme Court has identified a term-of-years sentence as being grossly disproportionate on only one occasion." United States v. Cobler, 748 F.3d 570, 575 (4th Cir. 2014) (emphasis added). In Solem, the Supreme Court dismissed as grossly disproportionate a life sentence without the possibility of parole for a recidivist defendant after he passed a bad check for $100

- 19 -

since the offense was "one of the most passive felonies a person could commit" and the sentence was the "most severe punishment" the state could impose at the time. 463 U.S. at 296-97 (quoting State v. Helm, 287 N.W.2d 497, 501 (S.D. 1980) (Henderson, J., dissenting)).

Raiche's sentence is in fact a severe non-capital judgment, however his acts can in no way be considered passive felonies. We need not recount the horrific incidents of abuse that Raiche visited on his nine innocent victims, and countless unnamed others, save to say that they are in no way near passing a bad check for $100. Similarly, we need not venture too deep into comparing crimes to say that Raiche's forty-one child pornography crimes are at a minimum as serious as the possession of 672 grams of cocaine which the Supreme Court deemed to justify a life sentence without parole for a first-time offender in Harmelin, illustrating just how high the Eighth Amendment bar is set. 501 U.S. at 961.

Further, the Supreme Court has upheld lengthy sentences for ostensibly lesser crimes involving fewer victims. In Hutto v. Davis, the Court upheld a forty-year sentence for possession and distribution of nine ounces of marijuana and drug paraphernalia. 454 U.S. 370, 370-71, 375 (1982). In Lockyer and Ewing, respectively, the Court upheld a fifty-year sentence for a conviction involving the theft of $150 worth of videotapes and a

twenty-five-year-to-life sentence for the theft of a few golf clubs, both under California's three strikes law. Lockyer, 538 U.S. at 70, 77; Ewing, 538 U.S. at 28, 30-31. Moreover, in Rummel v. Estelle, the Court held that a life sentence with the possibility of parole was not grossly disproportionate following a conviction for obtaining $120.75 by false pretenses. 445 U.S. 263, 265-66 (1980). Thus, given the extraordinarily daunting standard the Eighth Amendment imposes, it cannot be said that an eighty-year sentence for dozens of child pornography offenses reaches gross disproportionality.

As such, Raiche has failed to meet the daunting standard imposed by the Eighth Amendment at the first step by failing to show that his eighty-year sentence is grossly disproportionate to his forty-one crimes. The harm that Raiche has inflicted on his nine victims and countless unnamed others is immeasurable. Because we conclude that Raiche's eighty-year sentence is not grossly disproportionate, we need not reach the final two factors in Solem. United States v. Saccoccia, 58 F.3d 754, 788 (1st Cir. 1995) ("A reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." (quoting Solem, 463 U.S. at 290 n.16)).[5]

_____

[5] Even if Raiche had crossed the steep threshold inquiry that his sentence was grossly disproportionate on its face, we doubt he could satisfy the other Solem factors, as our circuit and our sibling circuits have upheld sentences nearing and far beyond

- 21 -

We need go no further.  For the reasons stated above, we

**AFFIRM**.

_____

Raiche's eighty years.  See, e.g., United States v. Goodman, 971 F.3d 16, 17-18 (1st Cir. 2020) (upholding as substantively reasonable a 3,120-month, or 260-year, sentence for eight counts of sexual exploitation of a minor in violation of § 2251(a) and one count of possession of child pornography in violation of § 2252(a)(4)(B)); United States v. Gaccione, 977 F.3d 75, 77-78 (1st Cir. 2020) (upholding as substantively reasonable a 2,160-month, or 180-year, sentence for five counts of sexual exploitation of a minor, one count of distribution of child pornography, and two counts of possession of child pornography); United States v. Arsenault, 833 F.3d 24, 26-27 (1st Cir. 2016) (affirming as substantively reasonable a sentencing determination of 780 months, or 65 years, where a school aide pled guilty to sexually exploiting three minors and transporting, receiving, and possessing child pornography); United States v. Goergen, 683 F.3d 1, 2, 6 (1st Cir. 2012) (upholding as substantively reasonable a sixty-year sentence for four counts of sexual exploitation of children); Cobler, 748 F.3d at 574 (upholding a 1440-month, or 120-year, sentence which was the sum of the statutory maximum sentences available for each count after the defendant was convicted of three counts of production, one count of possession, and one count of transportation of child pornography in connection with the sexual molestation of a minor); United States v. Gonzalez, 731 F. App'x 836, 838 (11th Cir. 2018)(upholding a 1200-month, or 100-year, sentence as not grossly disproportionate for one count of receipt of child pornography, two counts of possession of child pornography, and two counts of distribution of child pornography where the defendant was subject to a statutory maximum of 1200 months); United States v. Paton, 535 F.3d 829, 837 (8th Cir. 2008)(upholding a life sentence for five counts of production of child pornography involving five different victims where each was photographed multiple times and three victims were molested).