# United States Court of Appeals
## For the First Circuit

No. 14-1262

UNITED STATES OF AMERICA,

Appellee,

v.

DELANO NELSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

Angela G. Lehman on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and John P. Kacavas, United States Attorney, on brief for appellee.

July 17, 2015

**TORRUELLA, <u>Circuit Judge</u>.**   Appellant Delano Nelson ("Nelson") seeks review of his sentence for armed robbery.  Finding no reversible error in the proceedings of the district court, we affirm Nelson's sentence.

## I. <u>Background</u>

On October 17, 2011, two men later identified as Nelson and Walter Williams robbed Hannoush Jewelers in Manchester, New Hampshire.  Nelson, who had only recently been released from an eighteen-year incarceration for his role in a conspiracy to commit armed robbery in Indiana, entered the store first and took a brochure from an employee.  Williams then entered the store, wearing a mask and brandishing a silver handgun.  At this point, Nelson jumped over a display counter and ordered a second employee to get down while Williams maintained control of the lobby. Williams ordered the store manager to retrieve the cash from the register.  When the manager pressed the alarm button, Williams demanded that the manager turn around and get down on his knees and then struck the manager on the back of his head with the gun. Nelson, meanwhile, ordered an employee to open the display case and access the store's safe.  The value of merchandise taken was an estimated $212,332.00.

On November 4, 2011, three men in Halloween masks robbed Kay Jewelers in Tilton, New Hampshire.  Williams and Nelson were identified as two of these men.  Williams again brandished a silver

handgun during the robbery.  The total financial loss to Kay Jewelers was $208,297.96.

On May 11, 2012, the government filed a criminal complaint charging Nelson with two counts of interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a).  On July 20, 2012, Nelson surrendered to the authorities.  A two-count indictment followed on August 22, 2012, and Nelson pled guilty to both counts.  The Presentence Investigation Report ("PSR") calculated a Guidelines range of 97 to 121 months.[1]  The government requested an upward variance to 210 months.  The district court sentenced Nelson to 168 months in prison.

---

[1]  Under the United States Sentencing Guidelines, Count 1 had a base offense level of twenty (U.S.S.G. § 2B3.1(a)).  Six levels were added for the use of a firearm (U.S.S.G. § 2B3.1(b)(2)(B)). Two levels were added because the victim sustained a bodily injury (U.S.S.G. § 2B3.1(b)(3)(A)).  Two levels were added because the loss exceeded $50,000 (U.S.S.G. § 2B3.1(b)(7)(C)), making the adjusted offense level 30.  Count 2 had a base offense level of twenty (U.S.S.G. § 2B3.1(a)).  Six levels were added for the use of a firearm (U.S.S.G. § 2B3.1(b)(2)(B)).  Two were added because the loss exceeded $50,000 (U.S.S.G. § 2B3.1(b)(7)(C)), making the adjusted offense level 28.  Under the multiple count adjustment, each count had a unit of one.  These units were added to the greater of the offense levels (thirty) for a total of thirty-two for the combined adjusted offense level.  Two levels were subtracted for acceptance of responsibility (U.S.S.G. § 3E1.1(a)). An additional level was subtracted because Nelson timely notified the authorities of his intent to plead guilty (U.S.S.G. § 3E1.1(b)), making the total offense level 29.  Nelson received a criminal history score of three from the armed robbery he committed in 1992, giving him a Criminal History Category ("CHC") of II.  The Guidelines recommendation for a defendant with a total offense level of 29 and a CHC of II is 97-121 months.

The court explained that it was "varying upward" because "the nature of the offenses of conviction here are extremely violent robberies . . . the nature of which isn't sufficiently captured by the guidelines itself." The court added, "[T]he defendant's criminal history paints a picture of someone who is substantially more serious than a Criminal History Category II defendant as the guidelines would characterize him." The court was "particularly concerned by the fact that the defendant was most recently incarcerated previously for in part his involvement in a conspiracy to rob a jewelry store, and yet within 11 months . . . he's back involved in multiple jewelry store robberies." The court found that "the fact that his most recent conviction was for a sentence of substantial length, that that did not deter him, suggests that he does need to be removed from society for a substantial period of time to protect society." The court did not impose the sentence of 210 months requested by the government because it believed that Nelson was trying to turn his life around. The court then sentenced him to 168 months' imprisonment and noted that Nelson had a limited right to appeal. This timely appeal followed.

## II. Analysis

Nelson argues that the district court "procedurally erred when it pronounced a sentence of 168 [months] without adequately explaining the sentence or complying with [U.S.S.G.] §

4A1.3(a)(4)." In this regard, he attempts to make hay of the district court's loose usage of the terms "departure" and "variance." Nelson also contends that the sentence was "substantively unreasonable where the guideline range as calculated by the PSR was 97 - 121 months." According to Nelson, the district court failed to follow U.S.S.G. § 4A1.3 "when it arbitrarily announced a sentence of 168 months which effectively increased Nelson's criminal history category (CHC) from a level II to a level V or VI without the court ever stating as much."

This court reviews criminal sentences for both procedural and substantive reasonableness:

> We review the reasonableness of a criminal sentence under an abuse-of-discretion standard. This is a deferential standard, which recognizes the sentencing court's superior coign of vantage. In reviewing a sentence, we seek to ensure that it is both procedurally sound and substantively reasonable. A sentence is procedurally sound so long as the district court did not commit a procedural error in arriving at the sentence. Examples of procedural errors include: failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range. When assessing procedural reasonableness, our abuse of discretion standard is multifaceted. [W]e review factual findings for clear error, arguments that the sentencing court erred in interpreting or applying the guidelines de novo, and judgment calls for abuse of discretion simpliciter.

> Once we determine that the district court committed no significant procedural error, we then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, we take into account the totality of the

circumstances, including the extent of any variance from the [Guidelines Sentencing Range].

United States v. Trinidad-Acosta, 773 F.3d 298, 308-09 (1st Cir. 2014) (internal citations and quotation marks omitted).

The defendant argues that the sentencing judge imposed an upward departure based on the inadequacy of the defendant's criminal history category without complying with the attendant procedural requirements.  See U.S.S.G. § 4A1.3(a)(4)(A); see also Fed. R. Crim. P 32(h).  The threshold question, of course, is whether the district court imposed such a departure or instead imposed a variant sentence.

"A 'departure,' as explained by the Supreme Court, 'is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.'" United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014) (quoting Irizarry v. United States, 553 U.S. 708, 714 (2008)). "Variant sentences, by contrast . . . result from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a)."  Id.  The procedural requirements for variances are more lenient than those for departures, as this court made clear in United States v. Flores-Machicote:

> Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court.  Although the advisory guidelines are the starting point and the initial benchmark, a sentencing judge may draw upon his familiarity with a case, weigh the factors

enumerated in 18 U.S.C. § 3553(a), and custom-tailor an appropriate sentence. It follows that a sentencing court may not mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case. Rather, the court must take a flexible, case-by-case approach: once the GSR is properly calculated, sentencing becomes a judgment call involving an intricate array of factors.

United States v. Flores-Machicote, 706 F.3d 16, 20-21 (1st Cir. 2013) (internal citations and quotation marks omitted). We have found that a district court, when determining whether to apply a variance, "may consider whether a defendant's criminal history score substantially underrepresents the gravity of his past conduct." Id. at 21 (citations omitted).

That is precisely what occurred here. The district court at one point used the term "depart" but then expressly said that it was "varying upward." It then explained its decision to impose an above-the-range sentence by referencing not only the defendant's criminal record but also several of the enumerated section 3553(a) factors, including the seriousness of the offense, the need for deterrence, and the need to protect the public. "In short, nothing in the sentencing record persuades us that the district court intended to or in fact applied an upward departure under U.S.S.G. § 4A1.3(a)(1)." Aponte-Vellón, 754 F.3d at 93. Thus, to the extent that there was any procedural error - which we doubt - it was harmless; the record makes clear that "the district court would have imposed the same sentence as a variance in any event." Id.;

see also United States v. Oquendo-Garcia, 783 F.3d 54, 56 (1st Cir. 2015) ("If there were any question, the court's explicit invocation of 18 U.S.C. § 3553(a) at the time that it augmented the sentence sheds light on the court's intent. For the simple reason that the court varied, rather than departed, there was no Rule 32(h) error.").

That brings us to Nelson's argument that his variant sentence is substantively unreasonable. "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines." Gall v. United States, 552 U.S. 38, 47 (2007). Although a major deviation must be supported by a more significant justification than a minor one, no "extraordinary" circumstances are required to justify a sentence outside the Guidelines range. See id. Nor should the "percentage of a departure" be used "as the standard for determining the strength of the justifications required for a specific sentence." Id. The same holds true to the percentage of a variance. Furthermore, we have held that when a sentence is outside of the Guidelines range, "[t]he court's reasons for deviation should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender . . . . " United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).

-8-

"[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. at 96. Such is the case here. None of the forms of error articulated in Trinidad-Acosta was evident in Nelson's sentencing. Rather, the additional forty-seven months imposed on top of the Guidelines-recommended 121 months reflect the sentencing judge's concerted deliberation, a balance of the severity of the crimes with Nelson's stated desire to reform his behavior. The numerical upward adjustment and case-specific circumstances at issue here are akin to those in United States v. Del Valle-Rodríquez, 761 F.3d 171 (1st Cir. 2014), in which we upheld a variant sentence.

## III. Conclusion

The upwardly variant sentence imposed on Nelson, which was rooted in the circumstances of the offense and Nelson's characteristics, reflects the sentencing judge's concerted deliberation and balancing of the § 3553(a) factors. Because the sentence was procedurally sound and substantively reasonable, the judgment of the district court is therefore

**AFFIRMED.**