# United States Court of Appeals
## For the First Circuit

No. 15-1161

UNITED STATES OF AMERICA,

Appellee,

v.

PATRIK IAN ARSENAULT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Jonathan G. Mermin and Preti, Flaherty, Beliveau & Pachios, LLP for appellant.
Margaret D. McGaughey, Assistant United States Attorney, Appellate Chief, and Thomas E. Delahanty II, United States Attorney, on brief, for appellee.

August 10, 2016

**THOMPSON, Circuit Judge**.    Appellant Patrik Ian Arsenault, a school aide for special-needs students, pled guilty to sexually exploiting three minors, as well as transporting, receiving, and possessing child pornography.  In his appeal, Arsenault challenges the 780-month (or 65-year) sentence given to him as unreasonable.  After careful consideration, we find Arsenault's arguments without merit and, accordingly, affirm the sentencing determination of the court below.

### BACKGROUND

**A. Investigation and Underlying Offense**

In the summer of 2013, law enforcement agents began an investigation of Arsenault after confirming child pornography had been uploaded to an image-sharing website from his home.[1]  Federal agents then executed a search warrant at Arsenault's residence in Norridgewock, Maine where they sought computer related items in furtherance of the ongoing investigation.  After the agents told Arsenault that he was not under arrest and not obligated to answer questions, he chose to talk anyway.  Eventually, Arsenault made several rather damning admissions that he had been trading child pornography over the Internet for about a year, had sexually abused

---

[1] As this sentencing appeal follows a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report [("PSI")], and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

- 2 -

two minors, had video recorded and photographed some of his encounters with the children, and had stored images and videos of his sexual acts with them on an external hard drive in his home. At the conclusion of the search, Arsenault was arrested and charged with gross sexual assault in state court and, the following day, was charged by way of complaint in federal district court.

A subsequent forensic review of Arsenault's hard drive revealed sexually explicit images of Arsenault with a third minor and also uncovered more than 7,500 images and more than 250 videos depicting prepubescent male children engaged in sexual acts with other children and/or adults. It was also learned that at least two of Arsenault's three victims were special-needs children under the age of twelve, whom Arsenault had been introduced to through his job as an aide for autistic children. On varying occasions, these two victims had been entrusted into Arsenault's overnight care, during which time he drugged and sexually abused them.

Arsenault was eventually indicted for the sexual exploitation of the three minors, as well as the transportation, receipt, and possession of child pornography. On July 8, 2014, Arsenault pled guilty to all six counts of the indictment: the sexual exploitation of the three minors in violation of 18 U.S.C. §§ 2251(a) and 2251(e) (Counts I-III); and the transportation, receipt, and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1), 2252A(a)(2), 2252A(a)(5)(B) and 2256(8)(A)

(Counts IV-VI).  Probation filed a presentence investigation report ("PSI") on August 26, 2014.  Arsenault failed to file any written objections to that report.

**B. Sentencing Hearing**

During his sentencing hearing, Arsenault again voiced no objections to the PSI, except for a request that the PSI clarify that the three minor victims were not actually his students.  Nor did he raise any legal challenges to the recommended Sentencing Guidelines (the "Guidelines") enhancements.  The judge proceeded with his sentencing task.  After hearing from the families of the victims and noting that he had reviewed the PSI, victim-impact statements, and support letters submitted on Arsenault's behalf, the judge calculated the appropriate Guidelines range.  Finding a total offense level -- after all enhancements had been tallied (more on these enhancements later) -- of 43 and a criminal history category of I, the judge found the applicable Guidelines range to be life imprisonment.

However, the life sentence recommended by the Guidelines was higher than the statutorily authorized maximum sentences.  Under the relevant statutes, the maximum statutory sentence for Counts I-III was 30 years each, the maximum statutory sentence for Counts IV and V was 20 years each, and the maximum statutory sentence for Count VI was 10 years.  The judge therefore found the applicable range to be the statutory maximum of 1,680 months, or

- 4 -

140 years.  See U.S. Sentencing Guidelines Manual § 5G1.1 (U.S. Sentencing Comm'n 2015).  After explaining his calculations, the judge again specifically asked Arsenault if he had any objections to these findings and calculations.  Counsel for Arsenault responded that he had "no objection."

Before imposing a sentence, the judge went on to discuss his sentencing rationale in detail.  He explicitly stated that he had taken into consideration "each of the factors set forth in 18 U.S.C. Section 3553(a), including the obligation to impose a sentence that is sufficient, but no greater than necessary to achieve the purposes of the law" -- a concept known as the parsimony principle.  The judge explained that while he had considered "each statutory factor," he had concentrated on the "history and characteristics of the defendant, the nature and circumstances of the offense, and the need to protect the public from future crimes of the defendant."  After detailing his reasoning, the judge imposed a below-Guidelines sentence of 780 months, or 65 years.  Arsenault timely appealed.

## DISCUSSION

A review for the reasonableness of a sentence is bifurcated, requiring us to ensure that the sentence is both procedurally and substantively reasonable.  See  United States v. Mendez, 802 F.3d 93, 97 (1st Cir. 2015).  We ordinarily review both procedural and substantive reasonableness under a deferential

- 5 -

abuse-of-discretion standard.  United States v. Maisonet-Gonzalez, 785 F.3d 757, 762 (1st Cir. 2015), cert. denied sub nom.  Maisonet v. United States, 136 S. Ct. 263 (2015).  However, when assessing procedural reasonableness, this Court engages in a multifaceted abuse-of-discretion standard whereby "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st. Cir. 2015). If a party fails to preserve claims of error in the court below, these standards of review may be altered.  Id.  In such instances, review is for plain error.  Id.

Arsenault appears to raise three arguments on appeal: (1) that the judge erred in applying numerous enhancements in his Guidelines calculation; (2) that the judge failed to adequately consider or explain how the 65-year sentence imposed did not violate the parsimony principle; and (3) that the 65-year sentence did in fact violate the parsimony principle.

The first and second appear to be unpreserved, procedural reasonableness challenges.  See United States v. Nelson, 793 F.3d 202, 205-06 (1st. Cir. 2015) (noting that procedural errors may include "failing to calculate (or improperly calculating) the Guidelines range," "failing to adequately explain the chosen sentence," and "failing to consider the 18 U.S.C.

- 6 -

§ 3553(a) factors"); accord United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009). Given Arsenault's failure to object, we review his procedural challenges for plain error.[2] See Ruiz-Huertas, 792 F.3d at 226. Under this stiff standard, Arsenault must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id.

Arsenault's third challenge goes to the substantive reasonableness of his sentence. See United States v. Carrasco-De-Jesus, 589 F.3d 22, 29 (1st Cir. 2009) (discussing defendant's substantive reasonableness challenge for violation of the parsimony principle). As we have previously noted, the applicable standard of review for an unpreserved, substantive reasonableness challenge is "murky." United States v. Perez, No. 15-1234, 2016 WL 1612854, at *4 (1st Cir. Apr. 22, 2016) (citing Ruiz-Huertas, 792 F.3d at 228 (noting that it is unclear whether a substantive reasonableness claim must be preserved below to be afforded abuse-of-discretion review versus a tougher plain error review)). Here,

---

[2] The government argues that Arsenault may have waived any dispute regarding the Guidelines computations by repeatedly failing to object. See generally United States v. Sweeney, 606 F. App'x 588, 591 (1st Cir. 2015)(holding that "a waived issue ordinarily cannot be resurrected on appeal, whereas a forfeited issue may be reviewed for plain error"). But we assume favorably to Arsenault that he forfeited these claims and thus review for plain error.

however, it is not necessary to resolve this apparent incongruity. Arsenault's claim fails, even if we assume that the more favorable abuse-of-discretion standard applies to his substantive reasonableness claim.

We begin our review with Arsenault's procedural challenges.

## A. Procedural Reasonableness

### 1. Guidelines Enhancements

Arsenault complains about the enhancements which upped his Guidelines range. Indeed, "failing to calculate (or improperly calculating) the Guidelines range" constitutes a procedural error. Nelson, 793 F.3d at 205. But Arsenault cannot demonstrate that an error occurred, let alone that the purported error was clear or obvious.

Here is what the sentencing judge did. First, he appropriately set the applicable base offense levels. Counts I-III were each subject to a base offense level of 32. See USSG § 2G2.1(a). Counts IV-VI together were subject to a group base offense level of 22. See id. at § 2G2.2(a)(2). The judge then applied various enhancements based on different aspects of each offense.[3] This resulted in an adjusted offense level of 50 for

---

[3] Pursuant to several subsections of USSG §§ 2G2.1(b) and 3A1.1(b)(1), enhancements were applied to Counts I-II because the offenses involved: (1) the commission of a sexual act by force or other means upon (2) vulnerable, (3) minors under twelve, (4) who

Counts I and II, an adjusted offense level of 40 for Count III, and an adjusted offense level of 45 for grouped Counts IV through VI.  Next, the judge calculated the combined offense level, which resulted in a total combined offense level of 55.

The total combined offense level was properly calculated by taking the highest adjusted offense level (50), adding 3 levels pursuant to USSG § 3D1.4 for the combined offenses, adding 5 levels pursuant to USSG § 4B1.5(b)(1) because Arsenault committed a sex crime and was not a career offender, and subtracting 3 levels for acceptance of responsibility.  This total combined offense level was ultimately reduced to 43 pursuant to USSG ch.5, pt. A, cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43").

With a total combined offense level of 43 and a criminal history category of I, Arsenault faced a recommended Guidelines range of life imprisonment.  As mentioned before, because the life

---

were under Arsenault's care, and (5) the distribution of (6) material that portrayed sadistic or masochistic conduct.  Pursuant to several subsections of USSG § 2G2.1 enhancements were also applied to Count III because the offense involved: (1) a minor under twelve, (2) who was under Arsenault's care, and (3) the distribution of child pornography.  Pursuant to several subsections of USSG § 2G2.2, enhancements were applied to Counts IV-VI because the offenses involved: (1) minors under twelve, (2) a pattern of activity involving the sexual abuse or exploitation of minors, (3) the distribution for receipt of something of value for (4) material that portrayed sadistic or masochistic conduct, (5) through the use of a computer, and (6) over 600 images of child pornography.

sentence was higher than the statutorily authorized maximum sentence for each offense, the final applicable range was 1,680 months, or 140 years, pursuant to USSG § 5G1.1. The judge ultimately sentenced Arsenault to a below-Guidelines sentence of 780 months, or 65 years.

On appeal, Arsenault takes issue with a couple of aspects of the judge's calculations. However, none of his arguments carry the day.

First, Arsenault specifically challenges the following enhancements: (1) the two-level enhancement because the victims were in his custody, care or supervisory control (Counts I-III); (2) the two-level enhancement for committing a sex act by use of either force, threats or drugs, an intoxicant, or other similar substance without the persons' knowledge (Counts I and II);[4] (3) the two-level enhancement for distribution of pornography (Counts

---

[4] Arsenault briefly argues that this two-level enhancement pursuant to 18 U.S.C. § 2241 was improperly based on his use of force in the commission of the offenses and should be rejected as "duplicative or redundant." The PSI recommended a two-level enhancement for the use of either force or threats pursuant to § 2241(a) or by some other means (such as drugs or an intoxicant) pursuant to § 2241(b) in the commission of a sexual act. 18 U.S.C. §§ 2241(a) and (b). It is unclear which of the two subsections was ultimately relied upon by the judge. However, Arsenault's argument fails because if the two-level enhancement was based on his use of force pursuant to 18 U.S.C. § 2241(a), Arsenault's duplicative arguments fail for the reasons discussed below regarding double counting. And if the two-level enhancement was based on his use of drugs to render his victims unconscious, there is no dispute that he in fact drugged his victims. See id. at § 2241(b).

I-III); (4) the two-level enhancement for use of a computer (Counts IV-VI); and (5) the five-level enhancement for 600 or more images (Counts IV-VI).

Arsenault does not argue that the sentencing judge failed to recognize the advisory nature of the Guidelines or his broad discretion to impose a non-Guidelines sentence. See Kimbrough v. United States, 552 U.S. 85 (2007) (holding that sentencing judges can vary from Guidelines ranges based on policy considerations, including disagreements with the Guidelines). Rather, Arsenault contends that these enhancements simply do not "make sense" or they punish him for "inherent" and "standard" features of child pornography, which, he suggests, are already factored into the base offense level. Generously construed, his arguments boil down to an assertion that the child pornography Guidelines are just bad policy and, as such, the sentencing judge erred in applying them when calculating his sentencing range. We disagree. As we have explained, a sentencing judge is free to agree with the Guidelines, even if a defendant finds them to be bad policy. Stone, 575 F.3d at 93 (noting that "part of the sentencing court's broad discretion must be the discretion to conclude that guidelines are convincing for various reasons, including that they reflect popular will.").

Further, it is clear from the record that the sentencing judge simply declined to accept Arsenault's argument that he should

diverge from the Guidelines recommendation because of the harshness stemming from the enhancements. Although the result is severe, we have typically upheld enhancements that capture independent aspects of wrongfulness of an offense even when they result in a high Guidelines range. See id. at 96. Thus, the mere fact that these enhancements either resulted in a high Guidelines range or involved features common to child pornography does not result in a procedural error. Clearly Arsenault comes up short of showing plain error here.

With regard to his second complaint, Arsenault challenges application of the following enhancements: (1) the four-level enhancement for sadistic or masochistic conduct (Counts I-II); (2) the five and three-level enhancements applied in calculating his combined offense level; and (3) the two-level enhancement because Arsenault knew or should have known that the victims were vulnerable (Counts I-II). Arsenault argues that these enhancements are "duplicative" (in other words, they result in double counting).

We have held that where "neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists, clearly indicated adjustments for seriousness of the offense and for offender conduct can both be imposed, notwithstanding that the adjustments derive in some measure from a common nucleus of operative facts." United States

v. Reyes-Rivera, 812 F.3d 79, 88 (1st Cir. 2016) (quoting United States v. McCarty, 475 F.3d 39, 46 (1st Cir. 2007)). As for the contested enhancements, we are doubtful that they constitute double counting at all. But even if we assume that they do, Arsenault's claims still fail. Here, commentary to the enhancements for sadistic or masochistic conduct and for the calculation of the combined offense level (USSG §§ 2G2.1, 2G2.2, 3D1.4, and 4B1.5) do not provide a double-counting prohibition. And while USSG § 3A1.1 n.2 does prohibit application of the vulnerability enhancement "if the factor that makes the person a vulnerable victim [i.e., young age] is incorporated in the offense guideline," an exception exists to this partial bar where "the victim was unusually vulnerable for reasons unrelated to age." Given the special-needs status of two of Arsenault's victims, the application of the vulnerability enhancement here is permissible. On these points, Arsenault proffers no pertinent case law in support of his contrary position, and gives us no compelling basis for interference with the Guidelines directives. Once again he has not met his burden under the plain error standard.

### 2. Sentencing Explanation

Arsenault complains that the judge failed to adequately explain why a 65-year sentence, imposed on a defendant who is now in his twenties, does not violate the parsimony principle when considered with other § 3553(a) factors, such as deterrence and

- 13 -

public safety.  Arsenault insists that the judge should have spelled out why a "shorter-but-still-draconian sentence of (say) 30 or 40 years," in which he would be well into his 50s or 60s at release, would not be greater than necessary to achieve the legitimate goals of sentencing.  Arsenault points us to a Seventh Circuit case, United States v. Presley, 790 F.3d 699, 702 (7th Cir. 2015) (Posner, J.), which discusses at length the "downside of long sentences" and the problems of elderly prisoner populations.  In Presley, the court, sua sponte, questioned the appropriateness of lengthy sentences which fail to adequately factor in "the traditional triad of sentencing considerations: incapacitation, which prevents the defendant from committing crimes (at least crimes against persons other than prison personnel and other prisoners) until he is released, general deterrence (the effect of the sentence in deterring other persons from committing crimes), and specific deterrence (its effect in deterring the defendant from committing crimes after he's released)."  Id. at 703.  In sentencing matters it urged district judges to consider the predicted age of a defendant upon release noting "the phenomenon of aging out of risky occupations" including risky criminal behavior.  Id. at 702.

Because the district judge did not specifically address the concerns raised by the Presley court, Arsenault argues that the judge failed to consider all the relevant § 3553(a) factors

thereby committing procedural error. While we certainly agree that it would have been appropriate for the district judge -- had he chosen to do so -- to have been mindful of the Seventh Circuit's admonition that elderly prisoner issues "should be part of the knowledge base that judges, lawyers, and probation officers consult in deciding on the length of sentences to recommend or impose," id., we cannot conclude that the judge here plainly erred by not expressly considering these concerns.

What Arsenault's argument actually amounts to is faulting the judge for "not assign[ing] the weight to certain factors that [he] thought appropriate" and not taking into account specific considerations -- such as the elderly-prisoner problem -- which he finds relevant. Ruiz-Huertas, 792 F.3d at 227. Nevertheless, as we have said before, a judge has no obligation to assign weight to certain factors or considerations as a defendant deems necessary. See United States v. Rossignol, 780 F.3d 475, 479 (1st Cir. 2015) ("That the [appellant] would prefer an alternative weighing of the circumstances does not undermine the district court's sentencing decision."); see also United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010) (concluding that the district judge's silence about a sentencing angle advocated by a party did not undercut the sentencing decision where the record "evinc[ed] a sufficient weighing of the section 3553(a) factors").

Nor can we conclude, as Arsenault urges, that the district judge plainly erred in not giving voice to his distinct concerns. 18 U.S.C. § 3553(c) requires a sentencing judge to state in open court the reasons for his imposition of a particular sentence. However, as we have repeatedly held, although a district judge has a duty to adequately explain his choice of a particular sentence, "[he] has no corollary duty to explain why [he] eschewed other suggested sentences." Ruiz-Huertas, 792 F.3d at 228 (quoting United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014)).

Moreover, the judge is not required to explain his consideration of § 3553(a) factors in some sort of "rote incantation," and "where, [as here], the district judge explicitly states that [he] has considered the section 3553(a) factors, such a statement is entitled to some weight." Id. at 226-27.

The record makes clear that the district judge explained his sentencing rationale in detail, explicitly noting his mindfulness of § 3553(a) considerations. Specifically, the judge focused on Arsenault's personal history and characteristics, the nature and circumstances of the offense, and the need to protect the public from future crimes by Arsenault.

With regard to Arsenault's personal history, the judge considered Arsenault's upbringing; the fact that he was sexually abused as a child; his extensive substance abuse history; and his education and work experiences, noting that Arsenault had a "long

history of working with children" since he was 15. The judge further emphasized that despite knowing his compulsion and sexual attraction to young boys, Arsenault chose to work in a profession that would put him in regular one-on-one contact with such children.

With regard to the nature of the offense, the district judge discussed the seriousness of the offense and the need to provide just punishment, and pointed out a series of aggravating factors including the exceptional vulnerability of the direct victims, the effects on the parents as a second class of victim, and society as a whole as a third class of victim. The judge remarked that over the course of his last 11 years on the bench, Arsenault's case "may well be the worst [child pornography case he had] ever seen." The judge discussed the inculpating evidence found on Arsenault's hard drive including videos showing Arsenault having sex with two unresponsive, special-needs boys who had been entrusted to him for overnight care. The judge highlighted that Arsenault "selected out and chose these especially vulnerable boys as his victims"; that two of his victims were autistic; and that one victim was nonverbal, "which effectively meant he couldn't complain effectively" concerning the abuse inflicted upon him. The judge also underscored that not only did Arsenault drug, assault, and film his abuse of the children, he went on to trade

the content he produced over the Internet, via a forum where the material can never be erased and cannot be undone.

The judge took into consideration the egregious and callous tone with which Arsenault described his actions.  For example, the judge focused on Arsenault's own, cold descriptions of his abuse in which he described how "one of the victims, he seems to get uncomfortable.  He started to squirm, and he started requesting all done."  Despite the child's requests, Arsenault continued to callously describe how he would "have to give [his victims] their sleep medications earlier" and how it was "all [he could] think about."  To make matters worse, Arsenault invited a trading partner via email to come abuse the children together with him stating "ha, ha, ha, well I tried a few different positions, although it would have been better if [the child] was more sedated" and "you really should come and join us next time."

With regard to public protection, the judge noted that Arsenault's actions "erode[d] the confidence that we [as a society] have in each other" and that Arsenault's actions bred a lack of public trust concerning well-meaning male teachers entrusted to care for children.  The court noted that "when someone like [Arsenault] . . . cloak[s] himself in [the] great profession of [a teacher or aide] and then abuses the trust that comes with the profession, it casts an awful and unfair pall on the entire profession, particularly the men."  The judge thus found that it

was necessary for Arsenault to "be placed away from contact with young boys for a long, long time so [he would] do no more harm."

This thorough and detailed explanation was more than sufficient to satisfy the requirements of § 3553(c).  The bottom line is that Arsenault has failed to demonstrate that the judge committed an error -- let alone a clear or obvious error that affected his substantial rights and seriously impaired the fairness, integrity, or public reputation of judicial proceedings.  Ruiz-Huertas, 792 F.3d at 226.  And having found no procedural defect amounting to plain error, we now review Arsenault's substantive reasonableness challenge.[5]

## B. Substantive Reasonableness

To the extent Arsenault argues that his sentence is ultimately greater than necessary and therefore substantively unreasonable because of the elderly-prisoner problem, this argument mirrors his arguments already discussed above that his

---

[5] Arsenault also appears to accuse the judge of not taking into account § 3553(a)(6), which requires judges to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Arsenault suggests that his sentence should be lessened because it is longer than those of defendant priests sentenced in unrelated sexual abuse cases.  His argument fails because he proffers no evidence that the priests cited were in fact identically situated to him.  See United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009) (18 U.S.C. § 3553(a)(6) raises concerns only "if two identically situated defendants received different sentences from the same judge.").

sentence violated the parsimony principle because the sentencing judge did not take into account the effects of his old age upon release in his consideration of deterrence, recidivism, and public safety factors. These corresponding substantive reasonableness arguments are equally unavailing.

A sentence is substantively sound and "will survive a challenge to its substantive reasonableness as long as it rests on a 'plausible sentencing rationale' and reflects a 'defensible result.'" Perez, 2016 WL 1612854, at *4 (citing United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Additionally, "reversals in substantive reasonableness challenges are particularly unlikely when . . . the sentence imposed fits within the compass of a properly calculated [Guidelines sentencing range]." United States v. Hernández-Maldonado, 793 F.3d 223, 227 (1st Cir. 2015), cert. denied, 136 S. Ct. 522, 193 L. Ed. 2d 411 (2015) (alterations in original) (quoting Ruiz-Huertas, 792 F.3d at 228-29). "When the challenged sentence falls within the recommended Guidelines range, the [appellant] must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons.'" United States v. Batchu, 724 F.3d 1, 14 (1st Cir. 2013) (citing United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011)).

Here, Arsenault appears to argue that because of the procedural errors alleged above, the judge ultimately sentenced

him to an unduly harsh sentence that is substantively unreasonable. However, Arsenault fails to adduce any mitigating reasons powerful enough to persuade us that the judge was unreasonable in his judgment call. As discussed above, the judge explicitly stated that he considered his "obligation to impose a sentence that is sufficient, but no greater than necessary to achieve the purposes of the law" and thoroughly explained his plausible and defensible judgment call. Accordingly, we find no abuse of discretion in the sentencing judge's determination.

## CONCLUSION

For the foregoing reasons, we **<u>affirm</u>** Arsenault's 780-month sentence.