# United States Court of Appeals
## For the First Circuit

No. 16-1437

UNITED STATES OF AMERICA,

Appellee,

v.

AARON E. OLSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Inga L. Parsons, Christian J. Urbano and Law Offices of
Inga L. Parsons on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and John J.
Farley, Acting United States Attorney, on brief for appellee.

August 14, 2017

**TORRUELLA**, **Circuit Judge**.   Defendant-Appellant Aaron Olson ("Olson") committed securities and tax fraud, and he pled guilty to tax fraud.  Olson's plea agreement contained a sentencing range of forty-two to sixty months of imprisonment, and the district court sentenced him to sixty months.  Olson also agreed to pay restitution, and the district court ordered him to pay almost $23 million.  Olson now appeals his sentence and his restitution schedule.  We affirm.

## I.  BACKGROUND

### A.  Factual Background

In 1999, Olson began trading in commodities, and in 2002, he was approached by his first client.  Although he was not licensed as a trader, Olson continued adding clients.  By 2010, he had invested several million dollars for family, friends, and their businesses, and the New Hampshire Bureau of Securities investigated his unregulated trading.  However, Olson remained unlicensed to trade in New Hampshire, and his business, AEO Associates ("AEO"), was not registered to trade in the state.  As a result of the New Hampshire Bureau of Securities investigation, AEO effectively shut down and Olson created KMO Associates ("KMO"), which he registered in Massachusetts but ran out of his home in New Hampshire, where he remained unlicensed.  KMO was also not registered in New Hampshire.

By 2011, many of Olson's investments had failed. Rather than truthfully report losses to his investors, however, he turned his investment business into a Ponzi scheme, creating false earnings statements showing significant returns and attracting new investments to pay investors. Olson also converted about $2.6 million of investor funds for his personal use and comingled clients' funds with his own. In addition to his securities violations, he attempted to evade or defeat taxes on income he obtained from operating AEO and KMO.

Olson's clients finally became suspicious and confronted him. On March 23, 2012, he confessed and self-reported to the government and the Internal Revenue Service.

## B. Procedural History

The government filed a four-count information on April 14, 2014, charging Olson with attempt to evade or defeat tax, in violation of 26 U.S.C. § 7201. On March 9, 2015, Olson entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Agreement"), in which he pled guilty to the four tax-fraud counts. The Agreement allowed Olson to withdraw his plea if the district court did not accept it, and it contained, inter alia: a sentencing range of forty-two to sixty months; a condition that Olson would pay restitution to the victims "in amounts to be determined at the time of sentencing"; and an appeal waiver that

-3-

became effective if Olson was sentenced "within, or lower than, the guideline range determined by the Court." At his plea hearing, the district court informed Olson that "[u]nder some circumstances [he] . . . may have the right to appeal any sentence," but that Olson waived some appeal rights, "and those waivers are set forth in your plea agreement."

Thereafter, sentencing was delayed while Olson attempted to sell his granite quarry to provide a fund for restitution. The district court then held Olson's sentencing hearing on April 1, 2016. It calculated Olson's recommended sentencing range to be thirty-seven to forty-six months under the U.S. Sentencing Guidelines (the "Guidelines"), the same range recommended in Olson's presentence investigative report. Both parties agreed with the calculation and jointly recommended a sentence of forty-two months. The district court also heard testimony from two victims, Olson, and Olson's wife, read letters from victims submitted on Olson's behalf and victim impact letters provided by the government, and probed Olson's unsuccessful attempt to sell his granite quarry.

Ultimately, the district court sentenced Olson to sixty months of imprisonment, the highest possible sentence under the Agreement and an upward variance from the recommended guidelines range. The district court specifically laid out the factors it

considered, including the scope of the injury as partly evidenced by the testimony of the two victims, the need to deter other white-collar criminals, his continuation of the crime over an extended period, and his decision to defraud even though he was "privileged" and did not use drugs or alcohol. The district court also found that although Olson stated his remorse, he had not sold his granite quarry, contributed any other money for restitution, or made any other "acts of remorse." Although Olson's decision to self-report and help the government identify victims and their losses was a mitigating factor, the district court found that Olson had already benefited from it, presumably by avoiding charges for securities violations. Olson did not offer any legal objection to this ruling.

The district court held a separate hearing on restitution on October 31, 2016. At the hearing, the parties agreed that investors lost $22,811,405.26 from 2007 to 2012. Olson argued, however, that he had invested some of his clients' money in legitimate, though unsuccessful, investments. Because his clients had assumed the risk of losing money, those "legitimate" losses, which he calculated were approximately $5.5 million, should not be included in restitution amount. The district court rejected that argument, reasoning that but for Olson's inducements and misstatements, his clients would not have invested with him at

all.    It therefore ordered restitution of the entire $22,811,405.26.

## II.  ANALYSIS

### A.  We Assume Appellate Jurisdiction over All of Olson's Claims

The Agreement contained an appeal waiver that applied if Olson was sentenced "within, or lower than, the guideline range," which was thirty-seven to forty-six months.  Olson was sentenced to sixty months' imprisonment, so the appeal waiver does not apply.

The government nevertheless contends that this Court lacks jurisdiction over Olson's appeal because his sentence was within the forty-two to sixty months recommended in the Agreement's Sentencing Stipulations and Agreements.  "In the case of a plea agreement [such as Olson's] that includes a specific sentence under rule 11(e)(1)(C) . . . a defendant may not [make certain arguments on appeal] unless the sentence imposed is greater than the sentence set forth in such agreement . . . ."  18 U.S.C. § 3742(c).[1]  Given this bar, we may lack jurisdiction over some of Olson's claims of error, although other claims may constitute "violation[s] of law" over which we would retain jurisdiction.  18 U.S.C. § 3742(a)(1).

In addition, the Agreement's appeal waiver and the colloquy at Olson's change-of-plea hearing implied a right to

---

[1] Fed. R. Crim. P. 11 has been subsequently reorganized and the provision referred to by § 3742(c)(1) is now Rule 11(c)(1)(C).

appeal from any sentence above the applicable guidelines range, which Olson's sentence was. If Olson nevertheless cannot appeal, his plea arguably was not knowingly made and could be withdrawn. See United States v. Figueroa-Ocasio, 805 F.3d 360, 370-71 (1st Cir. 2015) (vacating a guilty plea that was not "knowing and voluntary"); United States v. Castro-Gómez, 233 F.3d 684, 687-88 (1st Cir. 2000) (allowing withdrawal of plea because "[a] failure to inform a defendant of a mandatory minimum sentence at his plea hearing 'implicates a core concern of Rule 11'") (quoting United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997)).

Rather than decide which of Olson's claims, if any, we can review and the effect of his appeal waiver, however, we can "'forsake the jurisdictional riddle' when the merits will be resolved in favor of the party challenging the court's jurisdiction." United States v. Woods, 210 F.3d 70, 74 (1st Cir. 2000) (quoting United States v. Stoller, 78 F.3d 710, 714 (1st Cir. 1996)). Although this rule is inapplicable to Article III subject matter jurisdiction, Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), it remains in place when, as in this case, only statutory jurisdiction is concerned. Woods, 210 F.3d at 74 n.2. Because we can easily dispose of Olson's appeal on the merits, we bypass the complex jurisdictional issue.

## B.   Olson's Sentence Was Not Unreasonable

For preserved challenges, "generally, both [procedural and substantive] aspects of this review are for abuse of discretion." United States v. Cortés-Medina, 819 F.3d 566, 568-69 (1st Cir. 2016). "When assessing the procedural reasonableness of a sentence, however . . . we afford de novo consideration to the sentencing court's interpretation and application of the sentencing guidelines . . . ." Id. at 569. Challenges that were not preserved in the lower court are reviewed for plain error. Id. Here, Olson did not offer any legal objection below, so we review his arguments under the plain-error standard.

First, the sentence was not procedurally unreasonable. We are not persuaded by Olson's argument that the district court applied an "upward departure" rather than a variance. Although the district court used the term "upward departure," its analysis shows that it imposed a variance. It never mentioned a single departure provision from the Guidelines, but it specifically cited the 18 U.S.C. § 3553(a) factors and carefully grounded its analysis in those factors. Right before its oral ruling on Olson's sentence, it again referenced § 3553(a) factors and applied its findings to those factors to justify its above-Guidelines sentence. We therefore conclude that the district court in fact imposed a variance rather than a departure. See United States v.

-8-

Santini-Santiago, 846 F.3d 487, 491 (1st Cir. 2017) (holding that basing a sentence on § 3553(a)'s factors "is the hallmark of a variance, even when the sentencing court references [a departure provision]"); United States v. Nelson, 793 F.3d 202, 206-207 (1st Cir. 2015) (finding an above-Guidelines sentence to be an upward variance where the district court specifically referenced § 3553(a) factors, notwithstanding the district court's use of the term "depart").  In imposing the variance, the district court did not have to give prior notice.  United States v. Aponte-Vellón, 754 F.3d 89, 94 (1st Cir. 2014) ("Rule 32(h) . . . placed the district court under no obligation to provide advance notice of the variance.").

Nor did the district court rely on improper factors in reaching its decision.  It did remark on Olson's privileged background, his lack of alcohol or drug use, and his failure to sell his granite quarry and provide funds for restitution, but those remarks were to prove Olson's conscious decision to defraud and his failure to show concrete remorse.  They properly relate to "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

Second, Olson's sentence was not substantively unreasonable.  "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the

degree of variance into account and consider the extent of a deviation from the Guidelines." Nelson, 793 F.3d at 207 (quoting Gall v. United States, 552 U.S. 38, 47 (2007)). "The linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). The district court's sentence passes that test. In making an upward variance, the district court took into account multiple aggravating factors, such as the financial harm caused by Olson's elaborate scheme, his continuation of the crime over an extended period, his conscious decision to defraud, and the need to deter other white-collar criminals. It also considered his lack of concrete actions showing remorse, and as a mitigating factor, his cooperation with the government. Together, the district court's careful deliberation demonstrates a plausible rationale and reaches a defensible result.

## C. The District Court Correctly Rejected Olson's Legitimate Investment Losses Argument

The parties agreed on the total amount lost by investors, so the only contested issue is whether that total should have been discounted because investors would have incurred some "legitimate" investment losses unrelated to Olson's fraud. In other words, Olson argues that his illegal scheme was not the but-for cause of

all of the investors' losses.[2]  The district court rejected that argument, as do we.

Olson is right that there must be a causal link between the illegal activity and the resultant losses.  18 U.S.C. § 3663A(a)(2). We have previously held that two "bedrock principles" of restitution orders require the that the government "show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)."  United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002) (citing United States v. Vaknin, 112 F.3d 579 (1st Cir. 1997)).  However, Olson's argument, which focuses on the "but-for" prong of the analysis, fails.  As the district court found, investors would not have trusted him with their money if he had disclosed that he was running an

---

[2] Restitution typically contemplates a causal link between the offenses of conviction and losses suffered by the victims of those offenses.  Here, Olson's plea was for tax evasion, making the IRS the victim.  However, pursuant to the parties' plea agreement, the district court ordered Olson to pay restitution to the victims of his Ponzi scheme.  See 18 U.S.C §§ 3663A(a)(3) (allowing the court to order restitution to "persons other than the victim of the offense"), 3663(c)(2) (allowing the court to order restitution for offenses falling under the Mandatory Victim Restitution Act for which the defendant has not been convicted pursuant to the plea agreement, but that nonetheless "gave rise" to that agreement).  Accordingly, the district court's causal link analysis focused on the nexus between Olson's fraudulent Ponzi scheme conduct and his investors' losses.

unlicensed business and incurring substantial losses, or if he had confessed that he comingled investors' funds, used new investments to pay prior investors, and misappropriated funds for his own use. Thus, Olson's misrepresentations were the but-for cause of all investor losses, and we agree with the district court that his legitimate investment losses argument is meritless.

### III. CONCLUSION

For the reasons stated, we affirm Olson's sentence and restitution schedule.

**Affirmed.**